IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VINCENT TIRPAK,<br><br>             Plaintiff,<br><br>v.<br><br>STATE OF DELAWARE,<br>DEPARTMENT OF TECHNOLOGY AND<br>INFORMATION,<br>JAMES H. SILLS, III, individually,<br>MICHAEL J. MYRON, individually,<br>LI WEN LIN, individually,<br>MATTHEW PAYNE, individually,<br>KIM THORNTON, individually,<br><br>             Defendants. | ))))))))))))))))))) | Civil Action No. 13-346-GMS |

## **MEMORANDUM**

### I.    **INTRODUCTION**

The plaintiff Vincent Tirpak ("Tirpak") filed this action on March 1, 2013, against the State of Delaware Department of Technology and Information ("DTI"), as well as several employees of DTI: James H. Sills, III ("Sills"), Michael J. Myron ("Myron"), Li Wen Lin ("Lin"), Matthew Payne ("Payne"), and Kim Thornton ("Thornton") (collectively, "the Individual Defendants"). (D.I. 1.) In his complaint, Tirpak alleged violations of (1) due process ("Count I"), (2) the Americans with Disabilities Act ("ADA") ("Counts II & III"), and the Family Medical Leave Act ("FMLA") ("Count IV"). (*Id.*) Presently before the court is a motion for summary judgment, filed on behalf of all the defendants (collectively, "the Defendants"). (D.I. 28.) For the reasons that follow, the court will grant the Defendants' motion for summary judgment.

## II. BACKGROUND

Tirpak begin working for DTI in 2006 as a Project Management Specialist. (D.I. 1, ¶ 13.) Tirpak acknowledged that his employment with DTI would be at-will when he applied for the job on September 15, 2006. (D.I. 30 at A-23.)

Tirpak suffers from attention deficit disorder ("ADD") and depression. (*Id.* at A-27.) DTI provided Tirpak with reasonable accommodations as required by the ADA, including clear, unambiguous written instructions for his assigned tasks, a quiet workplace, and a color printer. (*Id.*; D.I. 38, Ex. 1, ¶ 5.) Tirpak was also permitted to telecommute one day per week. (D.I. 38, Ex. 1, ¶ 5.) Between December 2010 and February 2011, Tirpak asserts that his accommodations were suspended. (*Id.* ¶ 6.) During this time, Tirpak was under the supervision of Myron and Kimberly Cahill. Tirpak complained that both Myron and Ms. Cahill harassed and bullied him. (D.I. 30 at A-18, A-36 – A-101.) Thornton, the Human Resources Administrator for DTI, investigated the complaint and found insufficient evidence of harassment. (*Id.* at A-17, A-18.)

On January 21, 2011, Dr. Jorge Pereira-Ogan sent a letter to DTI explaining that Tirpak required "minor accommodations" to be a productive employee.[1] (*Id.* at A-27.) Tirpak had been receiving treatment from Dr. Pereira-Ogan since 2001. (*Id.*) Dr. Pereira-Ogan recommended that DTI again provide Tirpak with the accommodations that had, according to Tirpak, been suspended, including having Tirpak's workstation moved away from Ms. Cahill. (*Id.* at A-32.) Moreover, Tirpak took leave under the FMLA from January 24 to February 2, 2011. (*Id.* at A-18, A-30 – A-34.) Shortly after Tirpak returned, on March 11, 2011, Myron placed Tirpak on a Performance Improvement Plan ("PIP"), citing numerous past instances of inadequate performance. (*Id.* A-

---

[1] Tirpak represents in his affidavit that a similar letter had been sent previously in 2005, although that letter does not appear in the record. (D.I. 38, Ex. 1, ¶ 4.) But Tirpak's assertion that accommodations had been made previously and then taken away tends to support his claim that DTI was already aware of Tirpak's mental health disabilities, before 2011.

111.) The PIP outlined specific action items for Tirpak to satisfy within given time periods. (*Id.*). On August 18, 2011, Myron completed a final review of the PIP. (*Id.* at A-123 – A-125.) The review noted that Tirpak "made improvements initially," but ultimately "he ha[d] been unable to maintain a satisfactory level of performance." (*Id.* at A-123.) DTI terminated Tirpak's employment on August 18, 2011, citing the PIP assessment. (*Id.* at A-127.)

Count I of Tirpak's complaint asserts that the Individual Defendants violated § 1983 by failing to offer adequate procedural due process prior to his termination. Count II asserts that DTI's harassment of Tirpak was discrimination against him for his disability, in violation of the ADA, 42 U.S.C. § 12101 *et seq.* Count III asserts that DTI failed to provide Tirpak with reasonable accommodations to comply with the ADA. Finally, Count IV asserts that DTI retaliated against Tirpak for taking FMLA leave.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material fact exists, the district court must view the evidence in a light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476

F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing Fed. R. Civ. P. 56(e)).

IV. **DISCUSSION**

The Defendants argue that summary judgment is appropriate because (1) Tirpak was an at-will employee and therefore was not entitled to pre-termination procedures; (2) DTI is immune from suit on Tirpak's ADA and FMLA claims; and (3) the complaint fails to allege ADA and FMLA violations against the Individual Defendants.

A. **Count I – Procedural Due Process**

"To establish a procedural due process claim, a plaintiff must demonstrate that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Iles v. de Jongh*, 638 F.3d 169, 173 (3d Cir. 2011) (internal quotation marks omitted). "The question of whether an employee has a property right in continued employment is a question of state law." *Id.* (alteration omitted) (quoting *McDaniels v. Flick*, 59 F.3d 446, 458 (3d Cir. 1995)).

The court agrees with the Defendants that, under Delaware law, Tirpak did not have a constitutionally protected interest in his continued employment with DTI. By statute, the State of Delaware has enacted a merit system guaranteeing public (or "classified") employees various rights and protections. *See* 29 Del. C. § 5902. Rules covering topics such as the filing of grievances and discharge are all outlined in the merit system statute. *See* §§ 5914–5940. DTI employees, however, are "exempt" and are not afforded the protections of classified service. § 9010C(a) ("All employees of the [DTI] . . . shall be exempt from Chapter 59 of this title."). The

4

Individual Employees were not "obliged to provide [Tirpak] with due process protections prior to [his] termination." *See Knight v. Del. Econ. Dev. Office*, No. 13-1141-SLR, 2015 WL 1263753, at *8 (D. Del. Mar. 19, 2015); *cf. Iles*, 638 F.3d at 173–74 (reviewing the public employment classification system for the U.S. Virgin Islands and explaining that those employees who are not employed according to the Personnel Merit System were not entitled to due process protections).

Notwithstanding the statutory exemption for his position, Tirpak himself acknowledged in his original application that his employment with DTI would be at-will: "If I am employed, I acknowledge that there is no specified length of employment . . . . Accordingly, either I or the employer can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law." (D.I. 30 at A-23.) It is well settled that a protectable property interest requires "more than a unilateral expectation of continued employment"; the employee "must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). "As a result, an at-will employee has no property interest in his or her job sufficient to trigger due process concerns." *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (internal quotation marks and alteration omitted).

Tirpak tries to avoid the plain language of his employment application by arguing that his actual offer letter from DTI did not contain at-will employment language. Given his five-year employment with DTI, Tirpak states matter-of-factly that he developed a reasonable expectation of continued employment. But Tirpak's arguments misstate the law, and his cited case law is inapposite. One does not acquire a property interest in continued employment simply by virtue of his or her ongoing employment. *See Brogdon v. Univ. of Del.*, No. 13-1600-GMS, 2015 WL 167686, at *5 (D. Del. Jan. 13, 2015) ("[T]he tenure of employment is not the test [for a reasonable

5

expectation of continued employment]."). "A plaintiff must demonstrate entitlement to a property interest created expressly by state statute or regulation or arising from government policy or a mutually explicit understanding between a government employer and an employee." *O'Donnell v. Simon*, 362 F. App'x 300, 304 (3d Cir. 2010) (quoting *Carter v. City of Phila.*, 989 F.2d 117, 120 (3d Cir. 1993)). Tirpak can point to no evidence supporting his position. Rather, as already noted, Delaware policy and statute demonstrate that DTI employees are exempt from state protections. And there is no evidence of a mutually explicit understanding of an ongoing employment relationship. In fact, the only relevant evidence—Tirpak's DTI job application—supports the opposite understanding: that the position was at-will, terminable "at any time." (D.I. 30 at A-23.)

As an at-will, exempt employee, Tirpak was not entitled to any pre-termination procedures. Thus, summary judgment for the Individual Defendants on Count I is appropriate.

### B. <u>Counts II & III – ADA Violations</u>

Tirpak's Counts II and III allege that DTI violated the ADA by discriminating against him for his mental health disabilities by harassing him and by failing to make reasonable accommodations for those disabilities. DTI, however, is a state agency and is immune from private suit pursuant to the Eleventh Amendment. There are two exceptions to the general rule barring suits against a state or its agencies: (1) where the state itself consents or waives immunity, or (2) where Congress properly abrogates immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Both exceptions must be unambiguously expressed. *Id.* Neither exception applies to Tirpak's Counts II and III, brought under Title I of the ADA, nor does Tirpak argue otherwise. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (holding that Congress had not validly abrogated state sovereign immunity for claims asserted under Title I of the ADA).

6

Rather, Tirpak argues for the first time that Counts II and III are actually brought against the Individual Defendants and not the agency itself, attempting to invoke the *Ex parte Young* doctrine. *See Ex parte Young*, 209 U.S. 123 (1908). "[A] person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the 'legal fiction' of *Ex parte Young*." *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). The Third Circuit has indeed recognized the vitality of "federal ADA claims for prospective injunctive relief against state officials." *Id.* at 179. Tirpak contends that his request for equitable relief is within the bounds permitted by *Ex parte Young*.

But despite Tirpak's clever improvisation, the court is unwilling to strain its reading of the complaint to the extent necessary to make out cognizable claims against the Individual Defendants. First, none of the Individual Defendants are identified in these Counts. Tirpak can only point to a vague reference to DTI's "agents and employees" in the claims. But both Counts II and III explicitly note that they are "against Defendant Department of Technology and Information"; in contrast, Count I names each of the Individual Defendants. (D.I. 1 at 9, 10.) Second, Counts II and III identify DTI as the singular "Defendant" at issue. (*Id.* at 10.) Clearly, Tirpak did not intend to assert ADA claims against the Individual Defendants until faced with the DTI's sovereign immunity defense.

Furthermore, for whatever the reason, Tirpak consciously chose to specify that Sills, Myron, Lin, Payne, and Thornton are each being sued *individually*. (D.I. 1 at 1.) There is, however, no individual liability under the ADA. *See Koslow*, 302 F.3d at 178. (allowing an ADA claim against a State official, "but only in his representative—not his individual—capacity"); *Issa v. Del. State Univ.*, No. 14-168-LPS, 2014 WL 3974535, at *4 (D. Del. Aug. 11, 2014) ("[I]ndividual liability is not available for discrimination claims brought under Title I or Title II of

7

the ADA."). While each of the defects in Tirpak's complaint may seem inconsequential in isolation, it is not the court's role to fill in blanks or correct errors in Tirpak's claims. Accepting Tirpak's last-minute effort to salvage his ADA claims would require considerable revision to the complaint. The burden of pleading remains firmly with the plaintiff, and Tirpak has never sought leave to amend his complaint to potentially satisfy this burden.

Even if the court were to find an adequately stated claim, the evidence adduced by Tirpak wholly fails to establish a genuine factual dispute requiring resolution by a jury. In fact, the only evidence Tirpak produces is a single affidavit, largely restating the allegations of the complaint. (D.I. 38, Ex. 1.) But importantly, Tirpak's sworn statements are entirely focused on DTI's conduct, rather than that of the Individual Defendants:

- "*DTI* took away [three] of these accommodations . . . ."
- "*DTI* attempted to demote Plaintiff . . . ."
- "*DTI* terminated his one day a week telecommuting."
- "*DTI* moved plaintiff to a shared, noisy cubicle."
- "*DTI* placed Plaintiff on a [PIP]."

(*Id.* ¶¶ 6, 10 (emphasis added).) On this evidence alone, no reasonable jury could find that the Individual Defendants violated the mandates of the ADA. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). Tirpak cannot "rest upon mere allegations, general denials, or . . . vague statements" to establish a genuine issue for trial. *See Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]he absence of any significant

probative evidence tending to support the complaint" indicates that summary judgment is appropriate. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968).

Eleventh Amendment immunity bars Tirpak's ADA claims against DTI. Moreover, the complaint fails to state an ADA claim against the Individual Defendants; even looking past the pleading deficiency, the court finds no record evidence illustrating a genuine dispute of material fact. Thus, the court grants summary judgment in Counts II and III.

### C. Count IV – FMLA Retaliation

The court need not devote significant time to discussing Count IV, as the analysis is largely the same as for Counts II and III. Tirpak's complaint originally alleged that DTI (alone) retaliated against him for taking leave from January 24 to February 2, 2011, in violation of the FMLA. (D.I. 1 at 11.) As with the ADA claims, Tirpak makes no argument that the State of Delaware has waived its immunity from FMLA claims, or that Congress has abrogated that immunity. *See Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327 (2012) (holding that Congress had not validly abrogated state sovereign immunity for claims asserted under the FMLA). Therefore, DTI is immune from suit.

Tirpak again makes the argument that Count IV (like Counts II and III) was actually directed to the Individual Defendants. For the same reasons already stated, the court will not turn a blind eye to the glaring pleading deficiencies, especially where Tirpak has never sought leave to amend. And as with Counts II and III, the Tirpak affidavit is solely directed to DTI, failing to raise a genuine issue for trial concerning the Individual Defendants' possible violations of the FMLA.[2] (D.I. 38, Ex. 1.)

---

[2] The court declines to address the Defendants' additional arguments that none of the conduct outlined in Tirpak's complaint and affidavit could support an inference of retaliation.

## V. CONCLUSION

As an exempt, at-will employee, Tirpak was not entitled to pre-termination procedures, and therefore there was no violation of due process. DTI is a stage agency, immune from Tirpak's claims arising under the ADA and FMLA. Moreover, Tirpak failed to adequately plead these claims against the Individual Defendants, or otherwise substantiate the claims with evidence. For the foregoing reasons, the court grants summary judgment as to each of the Counts of Tirpak's complaint.

Dated: June 3, 2015

_____
UNITED STATES DISTRICT JUDGE